UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

FRANK STAMBAUGH,

    Plaintiff,

    v.      CAUSE NO. 3:21-CV-631-DRL-MGG

TIM HUNTER, et al.,

    Defendants

OPINION AND ORDER

Frank Stambaugh, an inmate proceeding without a lawyer, filed a complaint under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court gives a *pro se* complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Stambaugh is a pretrial detainee at the Miami County Jail. His allegations are quite brief, but it can be discerned from the complaint and attachments that he is suing over a variety of incidents occurring at the jail in July and August 2021. He first claims that on July 20, 2021, Deputy Armstrong (first name unknown) told him to get off the

telephone when he was speaking with his attorney. He claims the deputy told him a lockdown was about to occur, but no lockdown ever occurred. He believes this violated his rights.

He next claims that on August 4, 2021, he had some standing water in his cell due to a leaky shower. He pushed the emergency call button and asked jail staff member Lauren Turnipee[1] if he could leave his cell and get a mop. She told him he could not leave his cell at that time. About an hour later, he slipped in the water and fell, injuring his back and arm. He was taken to an outside hospital for treatment, but he complains that Deputy Armstrong transported him to the hospital "with no seat belt" and instead had him lie down in the back of a vehicle. He alleges that he is still having back pain, and is also suffering from an enlarged liver and has "three [pieces of] metal" in his arm. Finally, he claims that while he was at the hospital, his "legal mail was gone through and photocopied." Based on these events, he sues Miami County Sheriff Tim Hunter, the Miami County Jail itself, Deputy Armstrong, and Ms. Turnipee. He seeks monetary damages and injunctive relief in the form of an order requiring that he be given "surgery."

Because Mr. Stambaugh is a pretrial detainee, his claims must be analyzed under the Fourteenth Amendment. *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). "Pretrial detainees cannot enjoy the full range of freedoms of unincarcerated persons." *Tucker v. Randall*, 948 F.2d 388, 390–91 (7th Cir. 1991) (citation omitted). Nevertheless, the

---

[1] Mr. Stambaugh does not provide any details about Ms. Turnipee's position at the jail, but it appears she is a correctional officer.

Fourteenth Amendment prohibits "punishment" of pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). A pretrial detainee states a valid Fourteenth Amendment claim by alleging that (1) the defendant "acted purposefully, knowingly, or perhaps even recklessly," and (2) the defendant's conduct was "objectively unreasonable." *Miranda*, 900 F.3d at 353–54. "[N]egligent conduct does not offend the Due Process Clause," however. *Id.* at 353.

Mr. Stambaugh first claims that his telephone access was denied. "In certain limited circumstances, unreasonable restrictions on a detainee's access to a telephone may . . . violate the Fourteenth Amendment. *Murphy v. Walker*, 51 F.3d 714, 718 (7th Cir. 1995). "Denying a pre-trial detainee access to a telephone for four days would violate the Constitution . . . if plaintiff was not allowed to talk to his lawyer for the entire four-day period." *Id.* at 719. Mr. Stambaugh alleges that he was told to get off the phone on one occasion. This is not the type of deprivation that would give rise to a constitutional violation. Nor is there factual content from which the court can plausibly infer that Deputy Armstrong acted intentionally, recklessly, or in an objectively unreasonable fashion by disrupting this one phone call. It is clear from the complaint that Deputy Armstrong told Mr. Stambaugh to get off the phone because he thought a lockdown was about to be imposed. Although Mr. Stambaugh alleges that no lockdown ever occurred, at most perhaps Deputy Armstrong may have been negligent in interfering with Mr. Stambaugh's call with his attorney, but that isn't enough for a Fourteenth Amendment violation. *Miranda*, 900 F.3d at 353–54.

Mr. Stambaugh next claims that the standing water in his cell violated his rights. To state a plausible Fourteenth Amendment claim, he must allege that "the conditions in his cell posed an objectively serious threat to his health; that [the defendant's] response was objectively unreasonable under the circumstances; and that [the defendant] acted purposely, knowingly, or recklessly with respect to the consequences of their actions." *Mays v. Emanuele*, 853 F. App'x 25, 27 (7th Cir. 2021) (citing *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019)). "A jail official's response to serious conditions of confinement is objectively unreasonable when it is 'not rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose.'" *Id.* (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)).

The complaint makes clear that Mr. Stambaugh had some standing water in his cell due to a leaky shower. He asked to come out of his cell to get a mop, but Ms. Turnipee told him he could not come out at that time.[2] Regulating an inmate's movements within the facility based on safety and security concerns is a matter on which the court must afford deference to prison staff. *Bell*, 441 U.S. at 547. Mr. Stambaugh was only in the cell with the water for about an hour when he slipped and fell. The court cannot conclude that being in a cell with a puddle of standing water for an hour constituted "an objectively serious threat to his health." *Mays*, 853 F. App'x at 27. It is unfortunate that Mr. Stambaugh fell, but there is no factual content to plausibly suggest that Ms. Turnipee

---

[2] An attachment reflects that the jail maintenance department had been notified about the leaky shower but had not gotten around to repairing it. (ECF 1 at 7.)

4

acted intentionally or with reckless disregard to Mr. Stambaugh's safety by not allowing him to immediately leave his cell to get a mop to clean up a puddle of water.

He further claims that Deputy Armstrong transported him to the hospital in an improper manner. Securing him with a seat belt might have been the best safety practice, but that is not the standard for a Fourteenth Amendment violation. There is no factual content to plausibly suggest that Deputy Armstrong acted purposely, knowingly, or recklessly with respect to the consequences of having Mr. Stambaugh lie down in the back of the vehicle. In fact, an attachment reflects that he was transported in this manner due to his back injury, apparently in an attempt to minimize the risk of exacerbating the injury by forcing him to sit up. Again, at most he alleges circumstances suggesting negligence, which is not enough to state a federal due process claim. *Miranda*, 900 F.3d at 353–54.

He also complains about his medical care. Pretrial detainees are entitled to constitutionally adequate medical care. *Kingsley*, 576 U.S. at 395. To state a claim, a detainee must allege that the defendant acted "with purposeful, knowing, or reckless disregard of the consequences" related to the provision of medical care, and that the medical care he received, or the denial of medical care, was "objectively unreasonable." *Miranda*, 900 F.3d at 354. Mr. Stambaugh suggests that he is not receiving proper medical care, but his allegations are quite vague. As to his back and arm,[3] it is clear that he was taken to an outside hospital for treatment after the fall, and he does not explain what care

---

[3] He does not explain why there is metal in his arm or how this is related to the fall, if at all.

he has received at the jail or allege how it has been inadequate. He does not provide any details about his liver problem or the care he has received for this issue. Nor does he name any individual involved with his medical care as a defendant. Based on what he has alleged, there is no plausible basis to infer that anyone at the prison has provided him care that was "objectively unreasonable."

Mr. Stambaugh also complains about the handling of his "legal mail," claiming that while he was at the hospital, someone opened his mail and photocopied it. An inmate has a general First Amendment right to send and receive mail, but that right does not preclude prison officials from examining mail to ensure it does not contain contraband. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974). An inmate's "legal mail" is entitled to greater protection. *Id.*; *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). "Legal mail" is a term of art, however, and refers only to mail to or from the inmate's attorney that is clearly identified as such; this type of mail may not be opened outside the inmate's presence. *Kaufman v. McCaughtry*, 419 F.3d 678, 686 (7th Cir. 2005). This purpose of this rule is to protect the inmate's Sixth Amendment right to counsel and the attorney-client privilege. *Wolff*, 418 U.S. at 576-77.

Mr. Stambaugh does not allege that the jail opened confidential communications to or from his attorney that were clearly labeled as such, or that their actions interfered in any way with his Sixth Amendment right to counsel.[4] Mail he might consider "legal,"

---

[4] He attaches a letter from an attorney to his complaint; it is unclear if this is the mail to which is referring. (*See* ECF 1 at 6.) The letter is quite general and merely provides information about retaining the attorney should Mr. Stambaugh choose to do so. There is no indication from the complaint or attachments that the letter was labeled on the outside as containing confidential attorney-client communications.

such as orders from the court or general mailings from organizations—even legal ones, may be opened and inspected without violating the inmate's rights. *See Guajardo-Palma v. Martinson*, 622 F.3d 801, 804 (7th Cir. 2010); *Kaufman*, 419 F.3d at 686. He appears to assert in an attachment that photocopying his mail violated state administrative rules, but a violation of state law does not give rise to a federal constitutional claim. *Wozniak v. Adesida*, 932 F.3d 1008, 1011 (7th Cir. 2019) ("[A] constitutional suit is not a way to enforce state law through the back door."). He has not alleged a plausible constitutional claim in connection with the handling of his mail.

Finally, he names Sheriff Hunter as a defendant, but there is no indication he was involved in any of these events. For a defendant to be held liable under section 1983, he or she must have been personally involved in the violation of the plaintiff's constitutional rights. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018). There is no general *respondeat superior* liability under 42 U.S.C. § 1983, and an individual cannot be held liable simply because they oversee operations in a correctional facility or supervise lower-level staff. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). A defendant will be deemed to have sufficient personal responsibility for a constitutional violation if the violation occurred "at a defendant's direction" or with his or her "knowledge or consent." *Mitchell*, 895 F.3d at 498. There is no factual content in the complaint to plausibly suggest that Sheriff Hunter caused any of these events, directed jail staff to act as they did, or was even aware of their actions. He has not stated a plausible constitutional claim against this defendant. He also sues the jail itself, but the jail is a building, not a "person" that can be sued for

constitutional violations under 42 U.S.C. § 1983. *See Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012); *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011).

Therefore, Mr. Stambaugh's complaint does not state a claim upon which relief can be granted. In the interest of justice, the court will allow him an opportunity to amend his complaint if, after reviewing the court's order, he believes that he can state a plausible constitutional claim, consistent with the allegations he has already made under penalty of perjury. *See Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018); *Luevano v. Wal-Mart*, 722 F.3d 1014, 1024 (7th Cir. 2013).

For these reasons, the court:

(1) GRANTS the plaintiff until **October 25, 2021**, to file an amended complaint if he so chooses; and

(2) CAUTIONS him that if he does not respond by the deadline, this case will be dismissed pursuant to 28 U.S.C. § 1915A because the current complaint does not state a claim upon which relief can be granted.

SO ORDERED.

September 27, 2021            *s/ Damon R. Leichty*
                            Judge, United States District Court